UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use of FAIRWAY, INC., <br><br> Plaintiff, <br><br> v. <br><br> MOUNTAIN DOOR & HARDWARE, INC.; CHARLES N. WHITE CONSTRUCTION CO.; ARCH INSURANCE CO., <br><br> Defendants. | No. 10-CV-675-BRB/RLP |

**ORDER DENYING MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

**BALDOCK**, Circuit Judge.[*]

Before the Court is Defendants Charles N. White Construction Co.'s (White) and Arch Insurance Co.'s (Arch) motion pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss Plaintiff Fairway, Inc.'s (Fairway) complaint for lack of subject matter jurisdiction. Because White and Arch conflate the Court's federal subject matter jurisdiction over Fairway's Miller Act claim with the elements necessary to such claim's success, the motion is denied.

---

[*] Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit Court of Appeals, sitting by designation pursuant to 28 U.S.C. § 291(b).

I.

According to the four corners of the complaint, White contracted with the Government to construct the United States Courthouse in Las Cruces, New Mexico. Pursuant to 40 U.S.C. § 3131(a)(2), a part of the Miller Act, Arch issued a payment bond on behalf of White to protect those supplying labor and material to the project. White thereafter entered into a "subcontract" with Defendant Mountain Door & Hardware, Inc. (Mountain Door), under which Mountain Door agreed "to provide materials and perform certain work" related to the doors at the courthouse. Plaintiff Fairway, Inc (Fairway), in turn, provided a proposal to Mountain Door "to supply materials and perform certain specified work" related to those doors. Mountain Door accepted Fairway's proposal. Fairway "commenced work/provided supplies and labor" on the federal courthouse project in February 2009. Fairway "completed its work and/or last supplied materials" to the project on February 25, 2010. Fairway "performed all work and supplied all materials in accordance with the documents, plans and specifications given to Fairway by Mountain Door and White." But Mountain Door "defaulted under the Fairway Contract" by failing to tender Fairway the remaining $103,111 due on a $693,400 invoice. Fairway brought this timely action on the payment bond under the Miller Act, 40 U.S.C. §§ 3131-3134, alleging entitlement "to payment under the Bond of all amounts due to Fairway under the Fairway Contract." Fairway notified White of its claim and demanded payment. To date, no payment has been forthcoming.

II.

Section 3133 of the Miller act provides for the "[r]ights of persons furnishing labor or material" to a Government project.  Subsection (b) states in relevant part:

> **(b) Right to bring a civil action.** –
> **(1) In General.** – Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought . . . .
> **(2) Person having direct contractual relationship with a subcontractor.** – A person having a direct contractual relationship with a subcontractor *but no* contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made. . . . .

40 U.S.C. § 3133(b)(1) & (b)(2) (emphasis added).  Under the terms of subsection (b)(1) and (b)(2) read in tandem, subsection (b)(1) provides Fairway a cause of action on the payment bond, regardless of its status as a materialman, laborer, or subcontractor, *if* Fairway had a contractual relationship, express or implied, with White.  Subsection (b)(2) meanwhile provides Fairway a cause of action on the payment bond, again regardless of its status, *if* Fairway had a direct contractual relationship with Mountain Door, *provided that* Mountain Door was a subcontractor of White.  See Clifford F. MacEvoy Co. v. Tomkins, 322 U.S. 102, 107-108 (1944) (construing an earlier version of the Miller Act).

3

III.

A preliminary question is whether Fairway's complaint arises under subsection (b)(1) or (b)(2) of § 3133. Fairway's complaint seeks recovery based on Mountain Door's breach of the "Fairway Contract." The complaint alleges: "Mountain Door accepted the terms of the Fairway Contract when it ordered the doors from Fairway for the Courthouse Project." According to the complaint, Mountain Door was a "subcontractor" of White, the prime contractor. The complaint further alleges Fairway provided notice of its claim to White. All these allegations are consistent with an action under subsection (b)(2). On its face, the complaint does not allege a contractual relationship between Fairway and White – a requirement for an action under subsection (b)(1) – although the complaint indicates Fairway performed work and supplied materials pursuant to both Mountain Door's and White's direction.

White and Arch construe the complaint as arising under subsection (b)(2). In their motion, White and Arch step outside the four corners of the complaint and assert Mountain Arch was not a subcontractor as alleged, but rather a materialman. As such, according to White and Arch, Fairway lacks "standing" to proceed:

> In the present case, Fairway brought suit against White's payment bond for materials supplied to the Las Cruces Federal Courthouse Project. . . . [I]t must be first determined that Mountain was a subcontractor to White in order for Fairway to collect against White's payment bond. Mountain was not a subcontractor to White. Since Mountain was not a subcontractor to White, this Court does not have subject matter jurisdiction over the claim by Fairway.

Fairway, on the other hand, appears to argue in its response to White's and Arch's

4

motion to dismiss (somewhat dubiously based on the allegations of its complaint) that its claim arises under subsection (b)(1) rather than subsection (b)(2) of § 3133: According to Fairway: "Fairway 'furnished labor' directly for White on the site of the Project as contemplated by . . . (b)(1).  Fairway established a 'direct contractual relationship, express or implied, with the contractor' (White) pursuant to . . . (b)(2) by working directly with White to complete the custom fitting and installation of the doors."  (In the omitted portion of the foregoing quote represented by the ellipses, Fairway miscites § 3133 as § 3131).  The Court, however, *at this time* need not resolve the apparent conflict between the parties' reading of the complaint.

IV.

In <u>Holt v. United States</u>, 46 F.3d 1000, 1003 (10th Cir. 1995), the Tenth Circuit described a "factual attack" to the district court's subject matter jurisdiction:

> [A] party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
> However, a court is required to convert a Rule 12(b)(1) . . . [factual attack] into a . . . Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

(internal citations omitted).

The problem with White's and Arch's motion is this: The Court's subject matter jurisdiction under the Miller Act is *not* dependent on the same statute that provides Fairway's substantive claim in this case, *i.e.*, § 3133. Specifically, the Court's jurisdiction to adjudicate Fairway's Miller Act claim is *not* dependent on the question of Mountain Door's status as a materialman, laborer, or subcontractor. Neither the Supreme Court nor the Tenth Circuit has ever so suggested. In J.W. Cooper Constr. Co. v. Rio Grande Steel Prod. Co., 390 F.2d 175 (1968), the Tenth Circuit was faced with the precise issue that White and Arch raise here: "The sole question presented is whether . . .[plaintiff] is a material supplier to a subcontractor or a remote material supplier to a materialman." Id. at 175-76. The district court concluded that plaintiff was a material supplier to a subcontractor and thus entitled to payment on the bond. The Tenth Circuit held: "We cannot say such a *finding* is *clearly erroneous*; therefore we affirm the trial court." Id. at 176 (emphasis added). Such language hardly bespeaks of subject matter jurisdiction. Rather, the Tenth Circuit obviously treated the question of a party's status under the Miller Act as a substantive element of the plaintiff's case. Cf. E & H Steel Corp. v. C. Pyramid Enter., Inc., 509 F.3d 184 (3d Cir. 2007) (holding a firm acted as a subcontractor to a prime contractor with nary a reference to subject matter jurisdiction).

"Jurisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties." Reed Elsevier, Inc. v. Muchnick, 130 S.Ct. 1237, 1243 (2010) (internal quotations and brackets omitted). Section 3133 does not speak to

the power of the court but to the rights of the parties. Tellingly, § 3133 is entitled "*Rights of persons* furnishing labor or material." (emphasis added). Subsection (b) is subtitled "*Right* to bring a civil action." (emphasis added). Subsection (b) plainly addresses the right of a plaintiff to maintain an action under the Miller Act rather than the power of a federal court to adjudicate such action. As the Supreme Court explained in Arbaugh v. Y & H Corp., 546 U.S. 500, 513 (2006):

> The basic statutory grants of federal-court subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for "[f]ederal-question" jurisdiction, § 1332 for "[d]iversity of citizenship" jurisdiction. A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim "arising under" the Constitution or laws of the United States.

Only where Congress "clearly states that a threshold limitation on a statute's scope shall count as jurisdictional," should the court treat it as such. Id. at 515. "But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." Id. at 516.

Congress has not clearly ranked § 3133(b)'s statutory limitations on Miller Act coverage as jurisdictional. Thus, Fairway has properly invoked the Court's federal-question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 alone.[1] Because Fairway's complaint alleges it had a "direct contractual relationship" with Mountain Door, a "subcontractor" of White, the prime contractor, Fairway's complaint at a

---

[1] Fairway's claim that its complaint also invokes the court's subject matter (diversity) jurisdiction under § 1332 is mistaken. Nowhere does the complaint allege such jurisdiction.

minimum states a colorable claim "arising under" § 3133(b)(2). White and Arch have confused the Court's subject matter jurisdiction under the Miller Act as alleged in Fairway's complaint with Fairway's burden to prove them "bound by the federal law asserted as the predicate for relief – a merits-related determination." Id. at 511 (internal quotations omitted). Accordingly, White's and Arch's "Motion to Dismiss Due to Lack of Subject Matter Jurisdiction" (Doc. # 7) is

DENIED.

                                                   Entered for the Court
                                                   this 27th day of October, 2010.


                                                 Bobby R. Baldock
                                                 United States Circuit Judge
                                                 Sitting by Designation